765 F.2d 145
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BILL GREEN; DIANA MARLOWE; PAUL J. OSBORNE; LINDA SAMS AND
MICHAEL TEAGUE, PLAINTIFFS-APPELLANTS,
v.
PAUL WHITE, DEFENDANT-APPELLEE.
 NO. 84-5203
 United States Court of Appeals, Sixth Circuit.
 5/29/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 BEFORE: LIVELY, Chief Judge and JONES, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellants appeal the judgment for appellee in this civil rights action alleging violation of their First and Fourteenth Amendment rights. This appeal presents the narrow issue of whether the plurality opinion in Elrod v. Burns, 427 U.S. 347 (1976) precludes the discharge of non-civil service employees solely because of their political affiliation. Upon consideration of that issue, we reverse and remand.
 
 
 2
 All of the appellants had been employed by the Sheriff's Department of Unicoi County, Tennessee (Sheriff's Department). Bill Green was an investigator and deputy. Diana Marlowe was a secretary. Paul Osborne was a deputy. Linda Sams was a clerk typist and dispatcher. Appellants were hired by Sheriff Roby Osborne.
 
 
 3
 Sheriff Osborne ran as the incumbent in the Republican Primary for Unicoi County in May, 1982. He ran against Paul White, a former Sheriff of Unicoi County and former County Court Clerk, who had been coaxed out of retirement by individuals who were displeased with Osborne's administration. Apparently, that dissatisfaction arose because Osborne had abolished civil service and had, ostensibly, staffed the Sheriff's Department with family and friends.
 
 
 4
 During Osborne's candidacy, each appellant supported him. White, however, won the primary and afterwards consulted a series of local officials concerning the selection of his employees. Not one person consulted by White recommended retaining any of the appellants.
 
 
 5
 After White won the general election, a newspaper article appeared indicating that there would be twenty-one positions open in the new Sheriff's Department and that any interested persons could apply Applications were passed out to current employees of the Sheriff's Department. White decided to keep about one-half of Osborne's employees. White discharged appellants and merely stated that the discharges were because of the change in administration.
 
 
 6
 Appellants filed this Sec. 1983 action, alleged that their terminations violated their First and Fourteenth Amendment rights as set forth by Elrod v. Burns, 427 U.S. 347 (1976). They sought reinstatement, backpay, compensatory damages, punitive damages, injunctive relief, and attorneys fees. The district court, without a jury, ruled in favor of White. Appellants now appeal.
 
 
 7
 In Elrod v. Burns, 427 U.S. 347 (1976) the Supreme Court decided, in its plurality opinion, that patronage dismissals of non-civil service employees by a newly elected sheriff were unconstitutional. The plurality opinion reasoned that patronage dismissals severely restrict political belief and association and are not the least restrictive means for fostering government efficiency and effectiveness or for contributing to the democratic process. The opinion recognized that patronage dismissals ensure the implementation of policies sanctioned by the electorate through a new administration and that that interest could be 'fully satisfied by limiting patronage dismissals to policymaking positions'--i.e. employees who might 'thwart the goals of the in-party.' 427 U.S. at 367, 372. A balance was struck between the employees' First Amendment rights and the government's interest in dismissing non-supportive employees. It was held that patronage dismissals of 'nonpolicymaking, nonconfidential' employees violate the First and Fourteenth Amendments. Id. at 372-73; see also id. at 375 (Stewart, J. and Blackmun, J. concurring).
 
 
 8
 In Branti v. Finkel, 445 U.S. 507 (1980), the Supreme Court decided the issue of whether patronage dismissals of two assistant public defenders were unconstitutional. The petitioner in the instant case argued that Elrod allowed dismissal of an employee with impunity so long as the employee was not asked to change political affiliation or to contribute to or work for the party in power. Id. at 516. The Court, however, believed that petitioner's interpretation emasculated the principles set forth in Elrod and required the discharged employee to prove political coercion. Id. at 516-17. It was held that to prevail in a patronage dismissal case it is sufficient that the plaintiff/employee prove discharge solely because of non-affiliation or nonsponsorship by a political party. Id. at 517 (quoting Elrod). The Court explained Elrod's exception for 'nonpolicymaking, nonconfidential' employees by stating that patronage dismissals are constitutionally-permissible when 'the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.' Id. at 518. Furthermore, it was held to be manifest that the continued employment of an assistant public defender cannot be properly conditioned upon the assistant public defender's allegiance to the political party in control of the county government. Id. at 519.
 
 
 9
 In the instant case, the district court did not consider the test set forth by Elrod and Branti. It broadly construed Elrod, failed to mention Branti, and then applied a test set forth by Mt. Healthy City School District v. Doyle, 429 U.S. 273 (1977). In doing so we believe the district court erred and we reverse and remand for further proceedings not inconsistent herewith.
 
 
 10
 Accordingly, we REVERSE and REMAND.
 
 
 11
 CELEBREZZE, Senior Circuit Judge, dissenting.
 
 
 12
 Dismissal of a public employee for reasons of political patronage may violate an employee's First Amendment rights of free speech and association. Connick v. Myers, 461 U.S. 138, 142 (1983); Branti v. Finkel, 445 U.S. 507, 516-517 (1980). In determining whether a particular discharge is proper, '[t]he threshold question is whether the plaintiff's conduct deserves constitutional protection.' Hildebrand v. Board of Trustees of Michigan State University, 662 F.2d 439, 442 (6th Cir. 1981), cert. denied, 456 U.S. 910 (1982). Next, if a court determines that constitutional protection is warranted, the factfinder must determine whether the employee was discharged 'because he engaged in the protected conduct.' Id. at 443. Stated another way, the plaintiffs in this case had to prove that they were discharged "solely for the reason that they were not affiliated with" the incoming Sheriff's party. Branti v. Finkel, 445 U.S. 507, 517 (1976) (quoting Elrod v. Burns, 427 U.S. 347, 350 (1976) (Brennan, J., plurality opinion)). The district court properly applied this test.
 
 
 13
 In this case, the district court concluded that the plaintiffs did engage in protected First Amendment activity in campaigning for the incumbent sheriff. However, the district court also concluded that the plaintiffs were not discharged for engaging in protected conduct. This latter finding 'is plausible in light of the record viewed in its entirety.' Anderson v. City of Bessemer City, North Carolina, ---- U.S. ----, 105 S. Ct. 1504, 1512 (1985) ('Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'). Accordingly, I would affirm.